UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTONIO HALL,

                    Petitioner,                    Case No. 1:21-cv-1074

v.                                                 Honorable Sally J. Berens

BECKY CARL,

                    Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner has consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment matters, by a United States magistrate judge.

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.    Factual allegations

Petitioner Antonio Hall is incarcerated with the Michigan Department of Corrections at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan.  On June 29, 2018, following a four-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of armed robbery and conspiracy to commit armed robbery in violation of Mich. Comp. Laws § 750.529, and first-degree murder, in violation of Mich. Comp. Laws § 750.316.  On August 20, 2018, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10, to prison terms of 25 to 100 years on the robbery offenses and life imprisonment for the murder conviction.[1]

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> This case arises out of the shooting death of the victim at the River Terrace apartment complex in Benton Harbor, Michigan.  The victim was sitting in his car with Uniqua Jones in the complex's parking lot.  Jones testified at trial that defendant and another man approached the car and asked the victim if he wanted to purchase a bottle of liquor.  The victim agreed.  He pulled out a two-inch stack of money from his back pocket to pay.  Defendant and the other man saw the money and walked away.  Later, a man that Jones identified as "Chub" approached on a bicycle and started shooting at the car.  Jones ran from the car to a nearby building to notify security.  Denzeil Dade, who testified at trial, explained that defendant and another man approached him about a robbery.  Defendant stated that he sold the victim liquor.  Dade agreed to participate in the robbery, but instead of attempting to rob the victim, he simply walked by the victim's car.  He then heard gunshots and hid in a nearby bush.  Shortly thereafter, he met with defendant, "Chub," and another man after he saw them walking in the park area near the office.  Law enforcement discovered the victim lying face down in front of his car in the parking lot.  He had been shot twice in the abdomen, and he died at the hospital.

---

[1] The armed robbery and murder sentences are to be served consecutively to a sentence of 2 years, 5 months, to 15 years for unarmed robbery—an offense for which Petitioner was on parole when he committed the armed robbery and murder offenses.  *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=931685 (visited Dec. 23, 2021).

*People v. Shamontae-Hall*, No. 345861, 2020 WL 359649, at *1 (Mich. Ct. App. Jan. 21, 2020) (footnote omitted).

"The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted). Although Petitioner may contest many of the facts described by the court of appeals, he does not claim that the court's description of the evidence is inaccurate. Moreover, Petitioner's habeas claims do not depend on a determination that the court of appeals' determinations of fact, as set forth above, were unreasonable on the record. To the contrary, Petitioner's claims relate to the selection of the jury, evidence the trial judge refused to admit, and a claim that a juror was sleeping. Because Petitioner does not challenge the facts as described by the court of appeals and quoted above—and does not offer any evidence to overcome the presumption of correctness—the Court will presume those facts to be correct.

The Michigan Court of Appeals rejected Petitioner's challenges to his convictions and affirmed the trial court. Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court. That court denied leave by order entered September 29, 2020. *People v. Hall*, 506 Mich. 918, 948 N.W.2d 564 (Mich. 2020). This timely petition followed.

The petition raises three grounds for relief, as follows:

I.      Mr. Hall was denied the effective assistance of trial counsel. Trial counsel Jason Engram was ineffective when trying to argue the grounds for a *Batson* challenge. He did not quote the proper case; he argued a *Brady* violation. Nor did he request that the trial judge [conduct] a hearing to fully determine the meritorious grounds to his objection.

II.     Mr. Hall was denied the constitutional right to pursue a defense in violation of [the] Due Process Clause of the Fourteenth Amendment and Confrontation Clause of the Sixth Amendment. The issue was preserved by counsel's challenge to the prosecution's peremptory removal of the African-American jurors in the venire. (TT pg. 188). Whether there was an equal protection violation under *Batson v. Kentucky*, 476 U.S. 79, 106

[S.]Ct. 1712, 90 L.Ed.2d 69 (1986), is a constitutional question with factual components.

III.    Mr. Hall was denied the effective assistance of trial counsel violating clearly established state and federal law. *Strickland v. Washington*, 466 U.S. 628 (1984). There was a member of the jury who had fallen asleep during testimony of [a] witness and defense counsel should have made an objection to try and remove this potential juror. The court[] does not stipulate how long and when the juror fell asleep and does not indicate what parts of trial testimony was missed. That would prevent a reasonable juror from making an unbiased decision regarding Defendant's guilt.

(Pet., ECF No. 1, PageID.6–9.)

Based upon the Michigan Court of Appeals' opinion, it appears that Petitioner may have inadvertently merged a couple of issues. In the appellate court, Petitioner raised a *Batson* issue along with a claim that his counsel was ineffective for failing to properly present the *Batson* issue and the issue relating to the sleeping juror. And Petitioner raised a claim that the trial court denied Petitioner the constitutionally guaranteed rights to pursue a defense and confront the witnesses against him, but that claim did not relate to the *Batson* challenge as Petitioner's habeas ground II states. It related to the trial court's refusal to permit Petitioner's counsel to explore a prior inconsistent statement from witness Uniqua Jones. To ensure that Petitioner's grounds are fully addressed, the Court will consider Petitioner's claims relating to *Batson*—the claim that the trial court denied Petitioner his rights and counsel rendered ineffective assistance in presenting the *Batson* claim—as habeas ground I. The Court will consider Petitioner's claims regarding the right to present a defense and confront witnesses and the trial court's refusal to permit certain questioning of Uniqua Jones as habeas ground II. The Court will address Petitioner's third habeas ground, regarding the sleeping juror, as it is presented in the petition.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).

4

An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it

5

decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was

required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of Section 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    *Batson*

In *Batson v. Kentucky*, 476 U.S. 79, 96 (1986), the Supreme Court articulated a three-step analysis to be applied to an Equal Protection Clause claim that purposeful discrimination occurred in the selection of the petit jury based solely on the prosecutor's exercise of his peremptory challenges at trial. *See United States v. Bartholomew*, 310 F.3d 912, 919 (6th Cir. 2002). First, the Defendant must establish a prima facie case of racial discrimination. *See United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003). This requires an initial showing that "the defendant . . . is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 476 U.S. at 96 (citation omitted). "[T]he defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). Ultimately, the Defendant, relying on this presumption and other facts, must "raise

an inference that the prosecutor used [the practice of peremptory challenges] to exclude the veniremen from the petit jury on account of their race." *Id.*

Second, once the Defendant has raised the necessary inference, "the burden shifts to the State to come forward with a neutral explanation for challenging [potential] jurors." *Id.* at 97. "The government is not required to persuade the court that its reasons for dismissing the juror were well-founded; rather, it need only demonstrate that its reasons were race-neutral." *Copeland*, 321 F.3d at 599. More specifically, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this . . . step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995) (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)).

Third, the party opposing the strike must demonstrate that the prosecutor's purported explanation is merely a pretext for racial motivation. *See McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001) (describing *Batson* test), *overruled on other grounds by Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006). Ultimately, the court must determine "whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359. In making this determination, the Court presumes that the facially valid reasons proffered by the prosecution are true. *Id.* at 359–60. Racially discriminatory purpose or intent must be affirmatively shown by the opponent of the strike. *Id.* at 360. The ultimate burden of persuasion always remains with the opponent of the strike. *See United States v. McFerron*, 163 F.3d 952, 955 (6th Cir. 1998).

Notwithstanding this three-part test, the Supreme Court has held that the question of whether a prima facie case has been established becomes moot once a court rules on the ultimate

question under *Batson* of whether there was purposeful discrimination.  *Hernandez*, 500 U.S. at

360; *Lancaster*, 324 F.3d at 432–33.  "Once a prosecutor has offered a race-neutral explanation

for the peremptory challenges and the trial court has ruled on the ultimate question of intentional

discrimination, the preliminary issue of whether the defendant had made a prima facie showing

becomes moot."  *Hernandez*, 500 U.S. at 359; *Lancaster*, 324 F.3d at 433.  The juror selection

proceedings in Petitioner's case must be evaluated against that backdrop.

> The court of appeals described the relevant trial court proceedings as follows:

> Defendant objected to the prosecution's dismissal of an African-American juror.
> The parties approached for a bench conference, and the following ensued:

>> *The Court*[:] You [referring to defense counsel] want to make a *Brady*
>> [sic] motion?[4]   You [now referring to the prosecutor] kicked two off.
>> What are you doing?

>> * * *

>> You'd [still referring to the prosecutor] better be able to articulate
>> something very significant.

>> * * *

>> *Ms. Wilkinson* [the prosecutor]: Judge, whether or not what [the
>> excused juror] says, your Honor, the fact of the matter is her son has been
>> convicted on an armed robbery, did a serious stint in prison for that.  I
>> think the (indiscernible) of the same type of accomplice co-defendant
>> situation that we're dealing with in this case, your Honor.  I understand
>> from what she articulated on the record, your Honor, but I think there is a
>> sufficient non-race reason to challenge her on a peremptory challenge.

>> *The Court*[:] Okay.  Do you [referring to defense counsel] want . . . to
>> be heard on the record outside the presence of the jurors or the potential
>> jurors?

>> *Mr. Engram* [defense counsel][:] We're on the record now; right?

>> *The Court*: Yes.

>> * * *

*Defense counsel*: —(indiscernible) at this point, I don't—I mean, I just—I don't think—I mean, we've got a mostly white jury at this point. See where I'm going with this?  There's one black person.

*The Court*: Well, we have—okay.  So are you making an objection under *Brady* [sic], is my question.

*Defense counsel*: Yeah.

*The Court*: Okay.

*Defense counsel*: That's what I—

*The Court*: Well, that's fine, because you've got to preserve the record.

*Defense counsel*: Okay.

*The Court*: So, I—is there anything further that you want to put on the record?

*Defense counsel*: I—I have, no—you know, other than that I have nothing else.  Right now I can't put my finger on anything to say (indiscernible).[5]

\* \* \*

*The Court*: Okay.  All right.  Well, I don't want to have her sit around here all—all day.  We'll let the Court of Appeals decide whether you've gone too far, [prosecutor].  I think articulating a basis other than race by the fact that this—in spite of her answers under oath on the record that her son was involved in an armed robbery that was—also involved multiple defendants, I suppose, articulates a—what might be considered, without doing further research, articular base—articular—articulable basis beyond race.  I will say that given her answers on under [sic] oath on the record that I have a concern, but I—but we'll let the Court of Appeals decide that one.  All right.

_____

[4] Although defendant argues that defense counsel erred by "objecting on the grounds of a *Brady* challenge" (presumably referring to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963)), it was actually the trial court that made this mistake.  At any rate, it was clear to both parties and the trial court that defendant was raising a *Batson* challenge.

[5] Defendant asserts in his Standard 4 brief that "[t]he trial court did not allow the defense to articulate or give any arguments to their claim which it is required to do[.]"  This claim is factually incorrect and does not warrant further discussion.

*People v. Shamontae-Hall*, 2020 WL 359649, at \*3 (footnotes in the court of appeals' opinion).

The court of appeals applied the following standard to resolve Petitioner's *Batson* challenge:

> "Under the Equal Protection Clause of the Fourteenth Amendment, a party may not exercise a peremptory challenge to remove a prospective juror solely on the basis of the person's race." *People v. Knight*, 473 Mich. 324, 335; 701 N.W.2d 715 (2005). The constitutionality of a peremptory challenge requires a three-step analysis: (1) "the opponent of the peremptory challenge must make a prima facie showing of discrimination;" (2) "if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike;" and (3) "if the proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has provided purposeful discrimination." *Id*. at 336–338.

*People v. Shamontae-Hall*, 2020 WL 359649, at \*3. Although the court of appeals cited state authority, the standard it applied was functionally identical to the *Batson* standard. Indeed, the *Knight* case derives the standard directly from *Batson*. *People v. Knight*, 701 N.W.2d 715, 722–24 (Mich. 2005). It cannot be said that the appellate court applied the wrong standard. Therefore, Petitioner can only prevail if the court applied the standard unreasonably.

The court of appeals applied the *Batson* standard as follows:

> Defendant does not challenge the trial court's ruling on any of *Batson*'s three steps, but instead argues that the trial court improperly applied *Batson*'s three steps as a whole. We disagree. Parts of the trial court's ruling are unclear, so we "must determine on the basis of a fair reading of the record what the trial court has found and ruled." *Knight*, 473 Mich at 339.

> It appears that the trial court, without so stating, found that defendant satisfied *Batson*'s first step and made a prima facie showing of racial discrimination. At any rate, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 US 352, 359; 111 S Ct 1859; 114 L Ed 2d 395 (1991). Thus, we turn to whether the other two steps of a *Batson* challenge were satisfied.

11

The prosecution offered a race-neutral explanation for dismissing the objected-to juror; the prosecution stated that it dismissed the juror because her son had been convicted of an armed robbery involving multiple defendants, which was a similar scenario to defendant's case. This Court, in similar circumstances, has found such an explanation to be a sufficient race-neutral reason for dismissal. See *People v. Howard*, 226 Mich. App. 528, 535; 575 N.W.2d 16 (1997) (concluding that the prosecutor's dismissal of a potential juror in a murder case on the basis that he had an uncle with whom he was close who had been tried for murder was a race-neutral reason). Thus, the prosecution satisfied the second *Batson* step.

The trial court, although somewhat hesitant, accepted the prosecution's race-neutral explanation and concluded that it was not a pretext for racial discrimination. Contrary to defendant's characterization of the trial court's ruling, we do not read its decision as leaving "[it] up to the court of appeal [sic] basically because he didn't want a juror sitting there." Rather, under a fair reading of the trial court's ruling, we believe that the trial court made a ruling, but acknowledged that, without doing additional research, its ruling could be wrong and so invited appellate review. Thus, the trial court satisfied the final step of a *Batson* challenge, and, taken as a whole, we conclude that the trial court properly applied the *Batson* framework. As defendant does not challenge the trial court's ultimate ruling on the *Batson* challenge, and limits his argument only to whether the proper procedure was followed, his argument does not warrant appellate relief.[6]

---------------

[6] If we were to review the trial court's ruling itself, we would conclude that defendant has not shown that the prosecution's challenge to the objected-to juror was based on race. The prosecution exercised 11 p[er]emptory challenges. From the record, it appears that two of those jurors were African American. Defendant did not object to the first dismissal. As already stated, the prosecutor's explanation with respect to the second juror was a race-neutral reason for dismissal. See *Howard*, 226 Mich App at 535. Further, at the time of the *Batson* challenge, defense counsel stated that there was one African American juror, but the record does not indicate the racial makeup of the individuals in the galley or the final jury. Considering the record and the prosecution's explanation, defendant has not shown that the p[er]emptory challenge to the juror was the result of racial discrimination. See *Knight*, 473 Mich at 344–345. We would therefore conclude that the trial court did not clearly err in determining that the prosecution provided a race-neutral reason for using a peremptory challenge. See *id.* at 337–338 (explaining that appellate courts review for clear error a trial court's decision that the prosecution offered a race-neutral reason for dismissing a juror).

*People v. Shamontae-Hall*, 2020 WL 359649, at *4.

Petitioner does not contend that the appellate court's interpretation of the record is unreasonable nor does he cite any clearly established federal law to which the court of appeal's analysis is contrary or that the court of appeals unreasonably applied. Petitioner simply cites *Batson*. Whether or not this Court agrees with the trial court's or the court of appeals' analysis of

the *Batson* issue, the Court concludes that those analyses follow the path laid out in *Batson* and are not unreasonable.  Accordingly, Petitioner is not entitled to habeas relief on his claim that the prosecutor violated Petitioner's equal protection rights when he exercised a peremptory challenge to remove a second African-American juror.

Petitioner's ineffective assistance claim relating to the *Batson* challenge fares no better.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*,

556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The court of appeals applied the following standard to resolve Petitioner's ineffective assistance of counsel claims:

> To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different."  *People v Sabin (On Second Remand)*, 242 Mich. App. 656, 659; 620 N.W.2d 19 (2000).  Effective assistance is "strongly presumed," *People v Vaughn*, 491 Mich. 642, 670; 821 N.W.2d 288 (2012), and the defendant bears the heavy burden of proving otherwise, *People v Dixon*, 263 Mich. App. 393, 396; 688 N.W.2d 308 (2004).

*People v. Shamontae-Hall*, 2020 WL 359649, at *5.  Once again, although the court of appeals cited state authority, the standard it applied was functionally identical to the *Strickland* standard. Indeed, the *Sabin* case derives the standard directly from *Strickland*.  *People v. Sabin (On Second Remand)*, 620 N.W.2d 19, 22 (2000).  Thus, it cannot be said that the appellate court applied the wrong standard.

Petitioner presents two ways that his counsel provided ineffective assistance with regard to presentation of the *Batson* claim:  first, Petitioner claims that counsel did not argue *Batson* at all—instead he argued *Brady*, presumably *Brady v Maryland*, 373 U.S. 83 (1963); and second, Petitioner claims that counsel did not request a hearing to establish that the prosecutor's proffered race neutral explanation for the peremptory challenge was a pretext.

14

The court of appeals rejected the first claim as factually unsupported by the record.  The court explained that it was the trial judge, not defense counsel, that misidentified the relevant authority.  *People v. Shamontae-Hall*, 2020 WL 359649, at *3 n.4.  Moreover, review of the arguments of defense counsel and the prosecutor, and the analysis of the trial judge, make clear that everyone understood that the challenge at issue was a *Batson* challenge, not a *Brady* challenge. *Id*.  The court of appeals' conclusion that defense counsel did not render ineffective assistance in that regard is eminently reasonable, entirely consistent with *Strickland*, and cannot support habeas relief.

The court of appeals resolved Petitioner's claim regarding counsel's failure to request a hearing as follows:

> Defendant argues that defense counsel was ineffective for failing to request a hearing for the trial court to address the *Batson* challenge.  However, as already discussed, defense counsel objected to the dismissal of the juror; the parties approached the trial court and discussed the challenge at a bench conference; and the trial court listened to the parties' arguments, ensured that those arguments were included in the record, and ultimately overruled defendant's challenge.  This is all that is required to address a *Batson* challenge.  Any motion made by defense counsel for a hearing on this issue would have been meritless.  "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion."  *People v. Riley*, 468 Mich. 135, 142; 659 N.W.2d 611 (2003).

*People v. Shamontae-Hall*, 2020 WL 359649, at *5.  Petitioner does not indicate what more might have been presented at the hearing that was not already presented or apparent by way of the bench conference.  The Supreme Court has identified several areas that might provide be relevant to show racial discrimination at a *Batson* hearing, e.g., "statistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in the case; evidence of a prosecutor's disparate questioning and investigation of black and white prospective jurors in the case; side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case; a prosecutor's

misrepresentations of the record when defending the strikes during the *Batson* hearing; relevant history of the State's peremptory strikes in past cases; or other relevant circumstances that bear upon the issue of racial discrimination," *Flowers v. Mississippi*, 139 S. Ct. 2228, 2243 (2019).  But Petitioner has not shown that any such evidence was at issue here.   Indeed, where the non-discriminatory reason—the prospective juror had a close relative who had been convicted of a similar crime—has already been accepted as valid by the Michigan courts, *People v. Howard*, 575 N.W.2d 16, 22 (Mich. Ct. App. 1997), and no other evidence of discriminatory intent is identified, seeking a hearing would have been meritless.   As the Sixth Circuit has recognized, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Petitioner fails even to allege that the state court unreasonably applied *Strickland* when it denied his claim that counsel was ineffective in failing to seek a *Batson* hearing.   Accordingly, Petitioner is not entitled to habeas relief on that claim.

### B.    Violation of Petitioner's rights to present a defense and confront witnesses

At trial, Petitioner's counsel asked Uniqua Jones whether the victim was at the River Terrace apartment complex to participate in a drug deal.  The prosecutor objected and the trial judge excused the jury.  Petitioner's counsel then argued that Jones had previously testified that the victim was at the River Terrace apartment complex to change his clothes; thus, counsel argued, an affirmative answer to the drug deal question would show that Jones's earlier testimony was a lie.  On appeal, Petitioner expanded that argument.  He claimed an affirmative answer would have also established that Jones was biased.  He claimed further that sustaining the objection prevented Petitioner from presenting a defense and from effectively confronting Jones as a witness. The court of appeals sifted through each of Petitioner's arguments and concluded that the trial

court did not abuse its discretion in sustaining the objection and foreclosing Petitioner's counsel's inquiry.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of a federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id*. at 67–68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68.  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017).  This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).  Moreover, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Not every part of Petitioner's claim elevates the evidentiary "drug deal" question to the level of a constitutional violation.  Whether or not the inquiry was proper impeachment or bias evidence under state law are really only focused on whether the evidence was relevant which,

without more, raises only state law issues.  It is only by virtue of Petitioner's invocation of his constitutional right to present a defense and his constitutional right to confront witnesses that his claim is even cognizable on habeas review.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). The Supreme Court long has read this right as securing an adequate opportunity to cross-examine adverse witnesses.  *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242–43 (1895), and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)).  As the Supreme Court early held,

> "The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

*Mattox*, 156 U.S. at 242–43, *quoted in California v. Green*, 399 U.S. 149, 157–58 (1970).  While the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee "'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Van Arsdall*, 475 U.S. at 679; *see also United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013); *King v. Trippett*, 192

18

F.3d 517, 524 (6th Cir. 1999).  "No matter how central [a witness's] credibility is to a case[,] . . . the Constitution does not require that a defendant be given the opportunity to wage a general attack on credibility by pointing to individual instances of past conduct."  *Boggs v. Collins*, 226 F.3d 728, 740 (6th Cir. 2000).

        In Petitioner's case, the crux of the court of appeals' decision is that the limitation on cross-examination was harmless.  The appellate court noted first that even if the question had been permitted and even if the witness answered in the affirmative, it would not have impeached her:

> Jones testified that the victim told her that he had to stop at River Terrace to change his clothes, but Jones did not testify that this was the only reason that the victim was at River Terrace.  Thus, even if the victim was at the apartment complex to participate in a drug deal, it does not make Jones' testimony that the victim told her that he had to stop at River Terrace to change his clothes untrue.

*People v. Shamontae-Hall*, 2020 WL 359649, at *2.  The court of appeals reached a similar conclusion with regard to witness bias:

> Defendant claims that if Jones agreed that the victim was waiting in his car to consummate a drug deal, it would support a finding that Jones' testimony was biased because her prior testimony sought to protect her stepfather.  But it is unclear how Jones's testimony protected her stepfather, who was never identified by name or otherwise involved in the case.  Moreover, defendant does not explain how Jones protecting her stepfather made her biased against defendant or otherwise influenced her testimony.  See *People v. Petri*, 279 Mich. App. 407, 413; 760 N.W.2d 882 (2008) (stating that the defendant "may not leave it to this Court to search for a factual basis to sustain or reject his position") (quotation marks and citation omitted).  In short, defendant has failed to establish that the answer to defense counsel's question involving a possible drug deal, even if answered in the affirmative, would show the existence of bias.

*People v. Shamontae-Hall*, 2020 WL 359649, at *2.  Likewise, the court of appeals determined that excluding the "drug deal" testimony did not deny Petitioner the opportunity to pursue a defense:

> The theory of the prosecution was that the motivation for the robbery was the victim's "stack" of cash that defendant observed during the liquor sale.  Defendant,

in response, argued that he was not present or involved in the robbery or murder. The actual reason for the victim's presence would not affect either of these theories, and the jury was entitled to believe defendant's version of events.  Moreover, Jones' testimony concerning defendant's involvement in the incident was corroborated by the testimony of three other witnesses, including Dade.  Defendant has not shown that the trial court's refusal to allow Jones to answer a question about an alleged drug deal denied him his constitutional right to present a defense . . . .

*Id*.

The court of appeals expressed its conclusion regarding the trial court's exclusion of the testimony in terms of Petitioner's failure "to show plain error affecting his substantial rights."  *Id*.  That is simply another way to say that the trial court's decision, if it was error, was harmless error.   In *United States v. Olano*, 507 U.S. 725, 734–35 (1993), the Supreme Court explained that determining the presence of "plain error" or "harmless error" involves the same analysis:  does the error affect substantial rights.   When the Supreme Court held that habeas petitioners are not entitled to relief based on "harmless error," it noted that the existing body of federal case law would apply to the standard.  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Thus, the habeas "harmless error" analysis is the same as the *Olano* analysis.  *Manning v. Huffman*, 269 F.3d 720, 726 n.3 (6th Cir. 2001).  The plain error test applied by the state court is also the same as the *Olano* analysis.  *See People v. Carines*, 460 Mich. 750, 597 N.W.2d 130 (Mich. 1999) (cited by the court of appeals in Petitioner's case); *People v. Grant*, 445 Mich. 535, 520 N.W.2d 123 (Mich. 1994).   Thus, the absence of prejudice that prompted the state appellate court's conclusion with respect to plain error indicates that the alleged error did not have a "substantial and injurious effect or influence in determining the jury's verdict[,]" *Brecht*, 507 U.S. at 623, and, therefore, was harmless.  *See Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[T]he state court considered only the third portion of the plain-error analysis, *i.e.*, whether [the alleged error] affected substantial rights. . . .  It determined that Wright had not established that [the alleged error] affected the outcome of the case. . . .  The portion of the plain-error analysis the Michigan court

undertook in this case was analogous to a harmless-error analysis because ***its conclusion that the error did not affect the outcome of the case is another way of saying that the error was not harmful***.") (emphasis added, citations omitted).

Under *Wright*, the state court's harmless error determination would be an adjudication on the merits entitled to AEDPA deference.  *Id.*, citing *Davis v. Ayala*, 576 U.S. 257 (2015).   More recently, however, the Sixth Circuit has stated that a habeas court must assess harmlessness under the standard set forth in *Brecht*, as opposed to the *Brecht* standard coupled with an evaluation of the state-court's application of the *Chapman* standard[2] under the AEDPA standard.  *Davenport v. MacLaren*, 964 F.3d 448, 454– 59 (6th Cir. 2020)[3] (citing *Davis*, 576 U.S. at 268 (holding that the *Brecht* test subsumes the limitations imposed by AEDPA) (citing *Fry v. Pliler*, 551 U.S. 112, 119–20 (2007))).

No matter what standard this Court applies, it concludes that the trial court's exclusion of Ms. Jones's answer to the "drug deal" question was harmless.  Petitioner has certainly failed to even allege that the appellate court's determination of harmlessness was unreasonable in any way and this Court concludes the determination was patently reasonable.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

---

[2] The *Chapman* standard is the standard of harmlessness typically associated with direct review—"harmless beyond a reasonable doubt"—rather than collateral review.  *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Brecht*, 507 U.S. at 622.  Under the AEDPA, where a state court has concluded that a constitutional error was harmless beyond a reasonable doubt, in accordance with *Chapman v. California*, 386 U.S. 18 (1967), "'a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable.'"  *Davis*, 576 U.S. at 269 (quoting *Fry*, 551 U.S. at 119 (emphasis in original)).

[3] The Supreme Court has recalled the mandate in *Davenport*, *see Brown v. Davenport*, 141 S. Ct. 1288 (2021), and granted a writ of certiorari, *see Brown v. Davenport*, 141 S. Ct. 2465 (2021).

### C.    Sleeping juror

Finally, Petitioner claims that his counsel rendered ineffective assistance because counsel should have objected to and tried to remove a sleeping juror.   The court of appeals addressed the claim as follows:

Defendant also claims that defense counsel was ineffective for not objecting when a juror fell asleep during the trial. his claim, however, is not supported by the record. It appears that defendant's assertion that a juror fell asleep occurred during defense counsel's cross-examination of Vanessa Lloyd.   Lloyd's boyfriend at the time, Jerail Lamont Porter, testified that he was staying with Lloyd near where the shooting took place, and that, after hearing gunshots, he went to a window and saw three men beating another man in the parking lot.   Porter identified defendant as one of the three men doing the beating.   While cross-examining Lloyd, defense counsel asked Lloyd what she told officers, as recounted in a police report, about Porter's actions when she left the room.   The following exchange occurred:

*Q*. Okay. This is my question: When the officer interviewed you, did you tell him that you remained in the room that you ran out of and cannot say what Porter was doing after you left?

*Ms. Wilkinson* [the prosecutor]: I'm sorry, Judge.   Did she—he say that she remained in the room or who remained in the room?

*Mr. Engram* [defense counsel]: She. She remained in the room that she ran—remained in the room that she ran—actually I think it should be ran to, and can't—

*The prosecutor*: This whole thing is confusing, Judge.

*The Court*: Yeah. What—where—step up.

(At 3:58 p.m., bench conference)

*The Court*: So, you've got a lousy police report, it sounds like.   Not—it wasn't very precise language he used.   Why don't you just ask what do you think—I mean is the confusion that—that the witness (indiscernible)?

*Defense counsel*: Yeah.

*The Court*: But—but you have a jury here that's, you know, falling asleep.

*Defense Counsel*: Yeah.

*Trial Court*: You do what you want to do.

22

*Defense Counsel*: Right.

*Trial Court*: But it sounds to me like that is a confusing statement in that police report and I can't tell what that—frankly, I didn't think her answer the first time you read that to her sounded inconsistent with anything she said.  She—she doesn't know what Porter was doing when she wasn't in the room with him, if that's where you're trying to go.  Yeah.  See if you can figure out a way of doing it without—

*Defense Counsel*: Yeah.

*Trial Court*: —confusing folks.  Okay?  All right.

Thus, the record does not support the inference that a juror actually fell asleep.  Instead, the trial court was cautioning defense counsel that his line of questioning was tedious and confusing, and suggested that he attempt another tactic or rephrase his question to keep the jury's full attention.  Because there was no sleeping juror, there was nothing . . . to which defense counsel could object.  See *Riley*, 468 Mich. at 142.

*People v. Shamontae-Hall*, 2020 WL 359649, at *5–6.

Petitioner does not allege that the court of appeals' determination that there was no sleeping juror was not supported by the record.  He simply assumes, presumably based on the trial judge's statement quoted above, that there was a sleeping juror and then he faults counsel for not addressing the matter.  The appellate court's determination that the record does not support the inference that a juror was actually sleeping is presumed correct.   Petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.  He offers nothing.

Because this Court must accept that there was no sleeping juror, it necessarily follows that any objection or attempt to remove the juror would have been meritless.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752.  Therefore, Petitioner has failed to show that the court of appeals' rejection of Petitioner's "sleeping juror" ineffective assistance claims are contrary to, or an unreasonable application of, *Strickland*.  Petitioner is not entitled to habeas relief on this claim.

**IV.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that jurists of reason . . . could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial

24

of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: January 25, 2022                                    /s/ Sally J. Berens
                                                          SALLY J. BERENS
                                                          U.S. Magistrate Judge